## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Merchant Ventures Limited,
and Patrick Cruise O'Brien,

                Plaintiffs,

                              Case No.:
                              1:18-cv-21860-KMW

      v.

Capital Blue Global Investments LLC,
Bernardo D. Cardoso, MLI Finance, Inc.,
and Kevin M. Robertson,

                Defendants.
_____/

## DEFENDANTS CAPITAL BLUE GLOBAL INVESTMENTS, LLC AND BERNARDO D. CARDOSO'S MOTION TO DISMISS THE ACTION WITH PREJUDICE, OR IN THE ALTERNATIVE, MOTION TO DISMISS COUNTS I, II, III, IV, VI, VII AND VIII

Defendants, Capital Blue Global Investments, LLC ("Capital Blue") and Bernardo D. Cardoso (collectively "Defendants"), by and through their undersigned counsel, hereby file their Motion to Dismiss the Action with Prejudice, or in the Alternative, Motion to Dismiss Counts I, II, III, IV, VI, VII and VIII, and Incorporated Memorandum of Law.

### I.      INTRODUCTION

Defendants respectfully request the Court to dismiss the entire action with prejudice. In their First Amended Complaint (Doc. 25), Plaintiffs have once again engaged in rampant shotgun pleading. This, in spite of the warning of the Honorable Magistrate Judge Torres (Doc. 22), expressly placing them on notice of their peril, and Eleventh Circuit authority condemning such pleading, of which they were also on express notice. Plaintiffs have squandered the precious time

1

and resources of the Court, and have caused Defendants to repeatedly incur undue and unnecessary costs and fees.

Alternatively, the Court should dismiss all counts directed to Defendants Cardoso and Capital Blue (Counts I, II, III, IV, VI, VII and VIII) for failing to state a claim upon which relief may be granted under Rule 12(b)(6), and/or for otherwise being legally insufficient under the relevant case law authorities.  Plaintiffs submit that the counts which should be dismissed with prejudice (if not all) should be based upon what the Court deems proper and just.

## II.    ARGUMENT

### A.    <u>Count I for Civil Theft Against Defendants Cardoso and Capital Blue</u>

Count I of the First Amended Complaint should be dismissed because the alleged loss to Plaintiffs resulting from the alleged theft, is not separate and distinct from the loss alleged to have resulted from the breach of contract.  As the Court observed in *Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1098 (S.D.Fla.1992):

> Florida law does not bar a civil theft claim simply because a contractual relationship is involved. *Masvidal v. Ochoa,* 505 So.2d 555 (Fla. 3d DCA 1987). However, where a contractual relationship exists, the alleged loss which results from the theft, must be separate and distinct from any loss alleged to have resulted from the breach of contract. *O'Donnell v. Arcoiries, Inc.,* 561 So.2d 344 (Fla. 4th DCA 1990).

Under Count I for Civil Theft, Plaintiffs seek recovery for their alleged payment to Defendants of an "Application Fee of €100,000.00 ($118,000.00) ***pursuant to a contract entered into between plaintiffs and defendants*** Capital Blue and Cardoso." (Doc. 25, ¶48) (emphasis added).  Although Plaintiffs seek to have that amount trebled pursuant to Fla. Stat. §772.11, as does *every* Civil Theft plaintiff, the "alleged ***loss*** which results from the theft" (*Id.*) is nonetheless €100,000.00 ($118,000), and Plaintiffs have expressly alleged that the Application Fee for which they seek recovery under their Civil Theft claim was paid to Defendants "pursuant to a contract."

A review of Plaintiffs' claim for Breach of Contract under Count II reveals that Plaintiffs specifically seek recovery for the alleged loss of the "Application Fee of €100,000.00 [$118,000]." (Doc. 25, ¶70).  Accordingly, since "the alleged loss which results from the theft, must be separate and distinct from any loss alleged to have resulted from the breach of contract" (*Colonial Penn*, 814 F. Supp. at 1098), and plainly, the alleged loss which results from the theft <u>is not</u> separate and distinct from any loss alleged to have resulted from the breach of contract, Plaintiffs' Civil Theft claim is barred as a matter of law, and should be dismissed with prejudice.

B. <u>**Count II for Breach of Contract Against Defendants Cardoso and Capital Blue**</u>

1. *More Impermissible Shotgun Pleading*

Count II for Breach of Contract (and, Plaintiffs urge, the entire action) should be dismissed with prejudice.  History has repeated itself, as once again, Plaintiffs have engaged in shotgun pleading.  Previously in this action, Plaintiffs filed a Motion to Strike or, in the Alternative, to Dismiss Complaint as an Impermissible Shotgun Pleading. (Doc. 14).  As a result, the Honorable Magistrate Judge Torres entered a paperless Order (Doc. 22), stating as follows:

> Upon review of the record and a review of the amended complaint, the Court finds that good cause exists to Order a more definite statement through an amended complaint, as per Rules 8 and 12(e). The allegations in the complaint run afoul of the rule in this Circuit forbidding the filing of shotgun pleadings. The Eleventh Circuit has now determined that a district court should dismiss such pleadings with prejudice after granting plaintiffs one opportunity to cure such defects.  See *Jackson v. Specialized Loan Servicing LLC*, No. 16-16685 (11th Cir. Aug. 3, 2018). Plaintiff is on notice that the shotgun pleading in this case substantially mirrors the complaint cited in *Jackson*, as it incorporates all the same facts into each count and does not separately identify the particular facts that support each element of the causes of action alleged. Accordingly, Plaintiff may cure these deficiencies through the filing of an amended complaint, that includes counts sub-divided by each element of the cause of action alleged and specific material facts pleaded under each sub-heading. Failure to comply with this Order may result in dismissal of the action with prejudice.

While the Plaintiffs' First Amended Complaint does not incorporate "all the same facts

into each count" this time around, Plaintiffs have nevertheless incorporated into their Count II claim for Breach of Contract, patently immaterial allegations (mainly pertaining to alleged fraud) from the general allegations (a/k/a "Factual Allegations") section of their pleading. (See Doc. 25, ¶60, incorporating ¶s15 through 43). In *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001), the Eleventh Circuit identified the practice of incorporating immaterial allegations from the general allegations into the various counts as being a species of "shotgun pleading." The Court noted that, "The result is that each count is replete with factual allegations that could not possibly be material to that specific count." *Id.* This form of pleading by the plaintiffs was one of the specific improprieties that prompted the Court to identify the complaint as "a quintessential 'shotgun pleading' of the kind we have condemned repeatedly, beginning at least as early as 1991." *Id.* See also, *Small v. Amgen, Inc.,* 2 F. Supp. 3d 1292, 1296 (M.D. Fla. 2014) ("A complaint incorporating a long list of general allegations into each claim for relief will also constitute a shotgun pleading if it fails to specify which facts are relevant to each claim.").

The following are allegations from the "Factual Allegations" section of the First Amended Complaint, which have been incorporated into Count II for Breach of Contract, per paragraph 60:

¶ 27 - "In short, the **prior continued representations** of defendants were lies."

¶ 28 - "It is plaintiffs' opinion and belief that defendants were, in fact, never able to perform as required by the contract and never intended to perform. **The contract was a fraud** for the purposes of extracting funds from the plaintiffs for the personal use of defendants."

¶ 29 - "Immediately upon the discovery of this **fraud,** on the 1st of February 2018, plaintiffs presented, by letter from their attorney, a demand for performance, or in the alternative, the repayment of the application fee and the payment of contracted penalty."

¶ 30 - "[Defendant Robertson] emphatically guaranteed that he would personally assure that defendant Cardoso and Capital Blue would perform if given more time. At this time, **he assured Mr. Cruise O'Brien that he had, in his possession, two bank instruments successfully issued by Cardoso**. Upon request he declined to share these instruments with plaintiffs, and it is **plaintiffs' opinion and belief that this statement was false**."

¶ 39 - "After much bluster and further demands for patience, it became clear to plaintiffs that **the statements of performance were lies**, that no instrument of any kind had been delivered and that **the representations of the defendants were entirely untrue**."

¶ 40 - "It is plaintiffs' information and belief that defendants never had the capability to carry out the contracted obligations, **never had any intention to do so, and never made any effort to do so**. Rather they took funds from the plaintiffs with the sole intention of **converting** the funds to their own use. All of the subsequent promises and commitments were designed to cover-up and delay the plaintiffs' discovery of this **theft**."

¶ 41 - "In furtherance of this **fraud**, plaintiffs have produced **fraudulent documents and fraudulent bank instruments so as to deceive plaintiffs**." (emphasis added).

Count II for "Breach of Contract" is a multi-headed Medusa, composed of allegations of not only breach of contract, but fraud, conversion, and civil theft. Plaintiffs have improperly incorporated "immaterial allegations from the general allegations" into their nominal Breach of Contract claim, and "[t]he result is that [Count II] is replete with factual allegations that could not possibly be material to that specific count." *Magluta*, 256 F.3d at 1284.

Moreover, Plaintiffs have failed to "present each claim for relief in a separate count, as required by Rule 10(b) and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). Additionally, Count II fails to comply with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

Plaintiffs have had their second bite at the apple to plead in conformity with the Eleventh Circuit's rulings, the Rules of Civil Procedure, and the Honorable Magistrate Judge's Order (Doc. 25), but have failed to do so. Thus, Count II should be dismissed with prejudice.

2.  *Defendant Cardoso is not a party to the contract and thus, cannot be held liable under Count II*

The alleged contract, a copy of which Plaintiffs have attached to their pleading as Exhibit 1, states, in relevant part, that the contract is "made and entered into…By and between: **The Provider** (**Lender**) **CAPITAL BLUE GLOBAL INVESTMENTS, LLC**…Signatory by: MR. BERNARDO D. CARDOSO Represented by: MR. BERNARDO D. CARDOSO…And **The Client** (**Borrower**)…**Merchant Ventures**…Signatory by: Patrick Cruise O'Brien Represented by: Patrick Cruise O'Brien."  Further, on the "**SIGNATURE PAGE**," immediately above the signature of "Bernardo D. Cardoso," appear only the words, "For and on Behalf of the **Provider**: **[CAPITAL BLUE GLOBAL INVESTMENTS LLC]**." (Exh. 1 to Doc. 25) (bold highlighting in original).  These recitations show, unequivocally, that Defendant Cardoso signed the contract purely in a representative capacity.  Plaintiffs have alleged in Count II that, "The plaintiffs and defendants Cardoso and Capital Blue entered into a valid and enforceable contract (the Contract)…(Exhibit 1)" (Doc. 25, ¶61)  But this allegation is contradicted by Plaintiffs' Exhibit 1. See, *Berry v. U.S. Bank Nat'l Ass'n,* 2015 WL 11233192, at *3 (S.D.Fla.2015) ("Although Plaintiff's Complaint makes the conclusory allegation that it did not receive an accurate payoff upon request, the exhibits attached to the complaint contradict that claim.  As in this case, 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" (quoting *Griffin Indus., Inc., v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007)).

Given that Cardoso signed solely in a representative capacity, he was not a party to the alleged contract and cannot be held personally liable thereunder.  "Generally, a signature preceded by the word "by" and accompanied by descriptio personae, that is, language identifying the person signing the document as a corporate officer or something similar, does not create personal liability for the person signing a contract to which he or she is not a specified party." *Robert C. Malt & Co.*

*v. Carpet World Distributors, Inc.*, 763 So.2d 508, 510 (Fla. 4th DCA 2000) (citation omitted). Although "[p]ersonal liability may still be imposed…where the contract contains language indicating personal liability or the assumption of personal obligations…" (*Id.*), Exhibit 1 contains no such language.  Furthermore, while Plaintiffs have alleged that Cardoso is the "sole owner" of Capital Blue, a "Limited Liability Corporation" [*sic*], Cardoso cannot be bound merely by virtue of such status, as "'the members, managers, and managing members of a limited liability company are not liable, solely by reason of being a member or serving as a manager or managing member…for a debt, obligation, or liability of the limited liability company.'" *TEC Serv, LLC v. Crabb,* 2013 WL 11326552, at *2 (S.D.Fla.2013) (quoting Florida Statute §608.4227(1)).

In view of the fact that Cardoso was not a party to the alleged contract under which Plaintiffs seek relief, he cannot be held liable under Count II, as a matter of law.  For this reason, the Court should order Count II for Breach of Contract, (at minimum) as it pertains to Cardoso, dismissed with prejudice.

**C.  Count III for Fraud Against Defendants Cardoso and Capital Blue**

A review of Count III, which is styled, "Fraud," shows that it is a conflation of both alleged fraud in the inducement of the contract based on alleged representations made *prior* to execution, in November 2017 of the contract (see Doc. 25, ¶73, sub-paragraphs I through V), and alleged fraud in the performance of the contract, based on alleged fraudulent conduct of Defendants committed *after* execution of the contract. (See Doc. 25, at ¶73, sub-paragraphs VII through X). Moreover, allegations of breach of contract and/or conversion have also permeated into Count III. (see Doc. 25, ¶73 VI; ¶74).  As such, Plaintiffs have patently failed to "present each claim for relief in a separate count, as required by Rule 10(b), and with such clarity and precision that the defendant will be able to discern what the plaintiff is claiming and to frame a responsive pleading,"

*Anderson*, at 366, and have disregarded the Magistrate Judge's Order (Doc. 22).  As the Eleventh Circuit has explained, "We do not require the district court, or the defendants, to 'sift through the facts presented and decide for itself which were material to the particular cause of action asserted.'" *Beckwith v. Bellsouth Telecomms. Inc*., 146 Fed.Appx. 368, 372 (11th Cir.2005) (quoting *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp*., 305 F.3d 1293, 1296 n. 9 (11th Cir.2002)).

Furthermore, an action for damages cannot be maintained on the ground of fraud in refusing to perform the contract, even assuming the defendant at the time of the making of the contract may have had no intention of performing it. *Canell v. Arcola Hous. Corp*., 65 So. 2d 849, 851 (Fla. 1953).  "The fraud must be separate and distinct from the breaching party's performance of the contract." *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.,* 208 F. Supp.  1310, 1318 (S.D.Fla.2002).  Yet, under Count III, subparagraphs VII, VIII, IX and IX of paragraph 73, are replete with allegations of fraud in the performance of the contract.  This is impermissible, and cannot state a cognizable claim upon which relief may be granted.  As the Court in *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 498 (Fla. 4th DCA 2001) explained: "Because fraud in the performance cases involves misrepresentations related to the breaching party's performance of a contract and thus fraud in the performance is inextricably linked to breach of contract, the economic loss rule bars the Plaintiffs' cause of action for fraud in the performance." (citations omitted). The *Samuels* Court clarified that, "In so ruling, we reject the Plaintiffs' argument that language in *Moransais v. Heathman*, 744 So.2d 973 (Fla.1999), indicates the economic loss rule cannot, in any circumstance, apply in any case except a products liability action. Thus, the trial court did not err in dismissing with prejudice the Plaintiffs' claim for fraud in the performance." *Id.*  Because Count III is based, to a significant extent, on Defendants' alleged fraud in refusing to perform the contract, it should be dismissed.

Additionally, as a separate and independent basis for dismissal of Count III, it is "simply an attempt in an indirect manner to obtain damages for breach of the contract." *Canell*, 65 So.2d at 851.  Count II for Breach of Contract seeks damages of €100,000 for failure to return the Application Fee to which Plaintiffs were allegedly entitled under the contract, as well as a five million Euro (€5,000,000) "penalty" pursuant to the contract. (Doc. 25, ¶70; ¶72).  Count III seeks those identical damages. (*Id*. ¶74).  Count III also vaguely seeks "lost business costs of Merchant Ventures of $20,000,000.00."  However, the fact that Plaintiffs seek an item of damages under their Fraud claim, which is not specifically sought in their Breach of Contract claim, does not alter that under Count III, Plaintiffs seek the identical damages of €5,100,000, (Application Fee + penalty) they seek under Count II for Breach of Contract.  Count III is thus an "attempt in an indirect manner to obtain damages for breach of the contract."  For this reason, and/or the other independently sufficient reasons discussed, Count III should be dismissed.

### D.  Count IV for Fraudulent Misrepresentation Against All Defendants

Count IV contains so many infirmities that it is difficult to decide where to begin.  As a threshold matter, there is no legal distinction between a claim for "Fraud" (Count III) and one for "Fraudulent misrepresentation" (Count IV).  See *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 336 (Bankr. S.D. Fla. 2013) ("In Count 4, the Plaintiff asserts a claim for fraudulent misrepresentation. In Count 8, the Plaintiff asserts a claim for fraud. Fraud and fraudulent misrepresentation refer to the same cause of action—common law fraud.")  Even if it were to be overlooked that Counts III and IV are at least nominally duplicative, Count IV incorporates all the allegations contained in paragraph 73, sub-paragraphs I through XII, of Count III, the majority of which (being fraud in performance allegations) are immaterial to Count IV.  For this reason, alone, Count IV should be dismissed with prejudice on the basis of shotgun pleading.

Second, Plaintiffs were apparently unable to make up their minds whether Count IV is a claim based on Fraudulent Misrepresentation, or Negligent Misrepresentation, the two claims being possessed of distinctly different elements.  In Count IV, Plaintiffs have alleged, in relevant part, that, "The representations made by all defendants were false and ***all defendants knew that they were false***." (Doc. 25, ¶76 III.) (emphasis added).   The foregoing allegation is unmistakably one going to Fraudulent Misrepresentation (as opposed to *Negligent* Misrepresentation).  "The essential elements of common law fraud or fraudulent misrepresentation [include]: (1) a false statement of material fact [and] (2) ***defendant's knowledge that the statement was false…***" *In re Palm Beach Fin. Partners*, 517 B.R. at 336 (citing *Butler v. Yusem*, 44 So.3d 102, 105 (Fla.2010)) (emphasis added).  Nevertheless, under Count IV, Plaintiffs allege: "Because of the ***negligent*** misrepresentations ***and omissions*** of the Defendants Plaintiffs is [*sic*] entitled the [*sic*] return of €100,000.00, plus damages in the amount of €5,000,000 and lost business revenues of $20,000,000.00." (Doc. 25, ¶77) (emphasis added).  To state a cause of action for negligent misrepresentation, a plaintiff must show, *inter alia*, that, "the defendant made a misrepresentation of material fact ***that he believed to be true*** but which was in fact false." *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So.3d 306, 309 (Fla. 1st DCA 2011).  By expressly alleging, in Count IV, that Defendants committed "negligent misrepresentations" (Doc. 25, ¶77), Plaintiffs have, by necessary implication, alleged that Defendants made misrepresentations of material fact they "believed to be true."  This directly contradicts their allegation in the immediately preceding paragraph that, "The representations made by all defendants were false and all defendants ***knew that they were false***..." (*Id*. ¶76 III) (emphasis added). See *Battle v. Cent. State Hosp.*, 898 F.2d 126, 130 (11th Cir. 1990) (noting that allegations that are contradicted by other allegations in the complaint may meet the test for "clearly baseless," and "may constitute grounds for dismissal");

10

*Smith v. Dekalb Cty. Jail*, 2014 WL 129509, at *2 (N.D.GA2014) ("Plaintiff asserts contradictory and conclusory factual allegations that are insufficient to state a claim."); *Peacock v. Gen. Motors Acceptance Corp.*, 432 So.2d 142, 146 (Fla. Dist. Ct. App. 1983) ("Contradictory allegations within a single count neutralize each other and render the count insufficient on its face.").  Thus, Count IV should be dismissed on the basis, *inter alia*, of the contradictory allegations contained therein.

Third, in Count IV, Plaintiffs allege they are entitled to relief based on "…*omissions* of the Defendants." (Doc. 25, ¶77) (emphasis supplied).  However, a claim based on omission(s) is separate and distinct from both a claim for fraudulent misrepresentation and one for negligent misrepresentation. "Fraud by omission is common law fraud by means of a failure to disclose a material fact—rather than by means of an affirmative misrepresentation—in the face of a duty to disclose that fact to the plaintiff." *In re Palm Beach Fin. Partners,* 517 B.R. at 334–35. "Specifically, in Florida, the elements of a cause of action for…fraud by omission are:

1. The defendant concealed or failed to disclose a material fact;
2. The defendant knew or should have known that the material fact should be disclosed or not concealed;
3. The defendant acted in bad faith;
4. The defendant knew that by concealing or failing to disclose the material fact, the plaintiff would be induced to act;
5. The plaintiff suffered damages as a result of the concealment or failure to disclose; and
6. The defendant had a duty to speak."

*Id.* (citing *R.J. Reynolds Tobacco Co. v. Martin,* 53 So.3d 1060, 1068–69 (Fla. 1st DCA 2010)). Plaintiffs have failed to allege any of the six (6) required elements for fraud by omission under Count IV, except element number 5., above, and have alleged no facts supporting such a claim.

Fourth, it appears that Plaintiffs' Count I Claim for Civil Theft has miraculously resurfaced and found its way into Count IV, as Plaintiffs have alleged that, "Plaintiffs relied on the misrepresentations of defendants, paid over funds and defendants have in fact stolen those funds.

(Doc. 25, ¶76 V).  Rule 8 (a)(2) requires that, "A pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief. There is nothing "plain" in Plaintiffs attempted statement of a claim under Count IV.  Count IV is a hodgepodge of allegations of fraud in the inducement, fraud in the performance of the contract (due to the incorporation of allegations from Count III), negligent misrepresentation, fraud by omission, and civil theft.  "It is in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure." *Magluta*, 256 F.3d at 1284.  Clearly, Plaintiffs have failed, under Count IV, to state a claim upon which relief may be granted.  Therefore, dismissal pursuant to Rule 12(b)(6) is appropriate.

Fifth, while the express allegations set forth under Count IV appear to indicate that Plaintiffs' allegedly fraudulent conduct was in fraudulently *inducing* Defendants to enter into the contract, this is overshadowed by the fact that Plaintiff have incorporated into Count IV, the immaterial allegations of fraud in the performance, breach of contract and conversion set forth in paragraph 73 of Count III for fraud, and additionally, have alleged civil theft (per ¶77 V).  As such, Count IV is afflicted with the same pleading defects discussed in relation to Count III, and more, including the improper co-mingling of different legal theories into a single count, a form of shotgun pleading, as the Southern District recognized in *Barkley v. Davis*, 2007 WL 4557156 (S.D.2007). In *Barkley*, the Court noted that the Eleventh Circuit was "concerned about the ramifications of cases proceeding on the basis of shotgun pleadings." *Id.* at * 2.  The *Barkley* Court accordingly reiterated that: "'Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'" *Id.* (quoting *Anderson*, 77 F.3d at 366-367).  From that point of departure, the Court in *Barkley* stated:

This court shares that experience, ***particularly in actions where myriad legal theories are consolidated into a single count. Such "shotgun" pleading imperils fundamental principles of due process***. Rule 10(b) of the Federal Rules of Civil Procedure expresses the view that a well-pleaded complaint contains only one claim per count. This Court agrees therefore with Defendants that as pled Count I violates Rule 10(b) and raises due process concerns.

*Barkley*, 2007 WL 4557156, at *2 (emphasis added).

Finally, like Count III, Count IV is "simply an attempt in an indirect manner to obtain damages for breach of the contract," *Canell*, 65 So.2d at 851. Count II for breach of contract seeks damages of €100,000 for failure to return the Application Fee to which Plaintiffs were allegedly entitled under the contract, as well as a €5,000,000 "penalty" pursuant to the contract (Doc. 25, ¶70; ¶72), while Count IV for fraud seeks those identical damages. (*Id*. ¶74). For this reason and/or any one or more of the reasons discussed above, Count IV should be dismissed.

### E. <u>Count VI for Conversion Against All Defendants</u>

Count VI for "Conversion" is, on its face, nothing more than a breach of contract claim in disguise, and a very thinly veiled one at that. The terms of the alleged contract are set forth in Exhibit 1 to the First Amended Complaint. Count VI of the First Amended Complaint is encompassed in paragraphs 84 through 91, and alleges, in its entirety, as follows:

On the 29th of November 2017 [date of execution of the alleged contract] the Plaintiff transferred funds to Defendants Capital Blue and Cardozo in reliance on and ***pursuant to those agreements***. (Exhibit 4). ***Defendants have a contractual obligation to return the funds*** in the case of non-performance. Plaintiffs paid over to defendants Cardoso and Capital Blue the sum of €100,000.00, ***characterized in the contract as an "Application Fee"*** subject to the *specific* <u>contractual provision</u> *that "the provider will return the application fee in full to the Client on day Fifteen (day 15)*." Defendants Cardoso and Capital Blue ***did not perform as required under the contract*** and despite demands from the plaintiffs ***have not returned the "Application Fee" as mandated by the Contract***. (***Exhibit 1***). In March 2018 defendant Cardoso admitted to plaintiffs in a telephone call, that he had given a portion of the "Application Fee" to defendant Robertson and had spent the rest on himself. (Exhibit 4). The taking of the application fee by defendants for their own use constitutes conversion of the application fee of €100,000.00. Despite repeated demands by Plaintiff for return of funds paid by Plaintiffs to Defendant,

they have not made effective restitution to the Plaintiffs. Plaintiffs are entitled to reimbursement the funds converted €100,000, plus damages in the amount of €20,000,000.

(emphasis added).

As noted in *Ginsberg v. Lennar Fla. Holdings, Inc*., 645 So.2d 490 (Fla. 3d DCA 1994):

…Lennar has failed to state a claim upon which relief may be granted. The claims sued upon are clearly contractual in nature, consequently the counts for conversion, civil theft, and RICO violations cannot lie. It is well established that breach of contractual terms may not form the basis for a claim in tort. Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort. (*Id*. at 494).

"The law in Florida is clear—a simple monetary debt generally cannot form the basis of a claim for conversion or civil theft." *Walker v. Figarola*, 59 So. 3d 188, 190 (Fla. Dist. Ct. App. 2011). "It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. Dist. Ct. App. 2008). "This is not to say that there can never be a claim for civil theft or conversion if there is a contractual relationship between the parties, but rather that **the civil theft or conversion must go beyond, and be independent from, a failure to comply with the terms of a contract.** *Walker*, 59 So.3d at 190 (citation omitted) (emphasis in original). "'A mere obligation to pay money may not be enforced by a conversion action...[A]nd an action in tort is inappropriate where the basis of the suit is a contract, either express or implied.'" *Burger King Corp. v. Austin*, 805 F. Supp. 1007, 1012 (S.D.Fla.1992) (quoting *Belford Trucking Co. v. Zagar*, 243 So.2d 646 (Fla.App.Dist.1970)). Accordingly, Count VI for conversion should be dismissed with prejudice.

**E.   Count VII for Unjust Enrichment Against All Defendants**

Here, Plaintiffs have engaged in still further pervasive shotgun pleading. As Magistrate Judge Torres instructed Plaintiffs, "The Eleventh Circuit has now determined that a district court

should dismiss such [shotgun] pleadings with prejudice after granting plaintiffs one opportunity to cure such defects." (Doc. 22) (citing *Jackson v. Specialized Loan Servicing LLC*, No. 16-16685 (11th Cir. Aug. 3, 2018)).  Yet, despite the Honorable Magistrate Judge's stern admonitions placing Plaintiffs "on notice" and giving them fair warning of their peril, and in spite of unequivocal Eleventh Circuit authority of which, at least by this time, they should be painfully aware, Plaintiffs have adamantly insisted upon indulging in the condemnable practice.

Count VII for Unjust Enrichment begins with the following introductory allegation: "Plaintiffs reallege and incorporate herein the allegations in paragraphs 75 through 81 as though fully set forth herein." (Doc. 25, ¶92).  Paragraph 75, in turn, states as follows: "Plaintiffs reallege and incorporate herein the allegations in paragraph 73, I through X, as though fully set forth herein." The net result of the foregoing is that Plaintiffs have incorporated the allegations of paragraph 73, sub-paragraphs I through X, into their Count VII claim for unjust enrichment.  As such, they have incorporated all of the following allegations into Count V:

I.      Plaintiffs MLI Investments and Robertson on June 7th, 2017 and on 12th of July 2017, the 23rd of July 2017, the 15th and 16th of September 2017 and on the 23rd of October 2017, and in an exchange of emails on the 28th of October, **assured plaintiffs that Capital Blue and Cardoso were able to issue financial instruments to plaintiffs' banking partners, when in fact they knew this to be untrue**.

II.      Plaintiffs Robertson and MLI also stated, on the 28th of October of 2017, by telephone and email, that Capital Blue and Cardoso had performed similar services successfully in the past, a statement which they knew to be untrue…Indeed, defendants were aware that Cardoso had never issued such instruments and had no ability to do so.

III.      Lastly, by telephone on the 30th of October **they assured plaintiff Cruise O'Brien that if Capital Blue and Cardoso did not perform that the deposited funds, characterized as an "Application Fee", would be immediately returned**…A statement which they also knew to be untrue.

IV.      Defendants Cardoso and Capital Blue, through MLI and Robertson, **induced plaintiffs to pay over the "Application Fee" by claiming the ability to issue financial instruments to bankers working with the plaintiffs and claimed past performance in this regard, knowing that this statement was untrue**, and the defendants had no such capability and that defendant Cardoso had no intention of doing so.

V.      Defendants **Capital Blue and Cardoso drafted, presented and signed, on the 29th of November 2017, a contract to provide financial instruments to plaintiffs' bankers**,

(Exhibit 1) knowing fully that they had no source for such instruments, no ability to obtain them and no intention to perform pursuant to such contract

VI.     Defendants induced plaintiffs to pay over the "Application Fee" based on a **contractual assurance that such funds would be returned intact if the contract failed**. (Exhibits 1and 4) They then **converted those funds for their own use**, with defendant Cardoso paying a portion of those funds to defendants MLI and Robertson. (Exhibit 4) **It is clear that defendants had no intention to return such funds as required by the contract**.

VII.     Throughout December, and January, specifically on the 12th, 13th, 18th and 30th of December 2017, the 9th 10th 17th 24th 29th and 31st of January, in telephone calls and email exchanges, (Exhibits 2 and 3) plaintiffs misrepresented to Plaintiff the performance of the Contract, including misrepresenting to plaintiffs the imminent conclusion of certain major financial transactions, which in fact were fraudulent representations, as no such transactions were in fact ever initiated.

VIII.     **Defendants Cardoso and Robertson repeatedly assured plaintiffs by email and telephone that financial instruments had been issued and/or were going to be issued and funds were to be paid, when in fact these statements were false, and the defendants knew them to be false**. These statements were made for the sole purpose of inducing plaintiffs to pay over funds, and subsequently to induce plaintiffs not to terminate the contract.

IX.     On the 1st of February **defendant Robertson admitted, on a telephone call with plaintiff Cruise O'Brien that, in fact, no instrument had been issued**, and indeed, **there had been no effort to obtain an instrument up until that time.** (Exhibit 4) **However, defendants MLI Investments and Robertson on that same telephone call and again on the telephone on the 2nd of February 2018 assured plaintiffs that plaintiffs Cardoso and Capital Blue were capable of performing under the contract and guaranteed that such performance would be forthcoming so as to induce plaintiffs not to terminate the contract with Capital Blue. (Exhibit 4) Robertson knew these statements to be false and knew that no performance was forthcoming**.

X.     In March of 2018 **defendant Cardoso, through defendant Robertson, sent to plaintiffs a purported copy of a financial instrument which they claimed had been sent to plaintiffs' bankers, knowing that no such financial instrument existed**.

(emphasis added).

Thus, Count VII for Unjust Enrichment incorporates immaterial allegations of fraudulent inducement, fraud in the performance of the alleged contract, formation and terms of the alleged contract, breach of the alleged contract, conversion, and implicitly, civil conspiracy.

But it does not end there.  In addition to incorporating paragraphs 75 and 73 into Count I, Plaintiffs have incorporated paragraphs 76 through 81, as well. (Doc. 25, ¶92).  Paragraph 76, which has been incorporated into Count VII, alleges as follows:

"76.    In making the various misrepresentations and omissions described herein to plaintiffs, the defendants made a series of fraudulent misrepresentations:

I.    Defendants Robertson and MLI repeatedly, by telephone calls and email message, in September and October of 2017, misrepresented the ability of Capital Blue and Cardoso to deliver bank instruments to plaintiffs; (Exhibits 3 and 4)

II.    Defendant Cardoso and Capital Blue represented that they had the ability to deliver the contracted for bank instruments and that they had successfully done so in the past, which statements were untrue; (Exhibit 4)

III.    The representations made by all defendants were false and all defendants knew that they were false, or in the alternative, in the case of defendants Robertson and MLI, was [*sic*] reckless without any knowledge of investigation of its truthfulness which could have been easily discovered.

IV.    The representations made by all defendants were made with the intention that the plaintiffs rely on them, sign the contract and transfer money to defendants Cardoso and Capital Blue, which money was subsequently shared with defendants Robertson and MLI.

V.    Plaintiffs relied on the misrepresentations of defendants, paid over funds and defendants have in fact stolen those funds."

Finally, paragraph 77 alleges: "Because of the negligent misrepresentations and omissions of the Defendants Plaintiffs is entitled the return of €100,000.00, plus damages in the amount of €5,000,000 and lost business revenues of $20,000,000.00."

By virtue of incorporating paragraphs 76 and 77, Plaintiffs have infiltrated into Count VII for Unjust Enrichment, a plethora of immaterial allegations, including fraudulent inducement, fraud in the performance of the contract, negligent misrepresentation, negligent omission, recklessness (by MLI and Robertson), civil theft, and implicitly, civil conspiracy.

But it does not end there.  Plaintiffs have also incorporated paragraph 78 into Count VII (Doc. 25, ¶92).  Paragraph 78, in turn, states as follows: "Plaintiffs reallege and incorporate herein the allegations in paragraph 64, I through X, and Paragraph 67, I through V, as though fully set forth herein."  Accordingly, Plaintiffs have incorporated the allegations of paragraph 64, I through X, and paragraph 67, I through V into Count VII.  However, there is no *paragraph 64, I through X*, nor is there a *paragraph 67, I through V*.  Instead, paragraph 64 states, in its entirety, that, "The

deadline for performance was extended several times by plaintiffs based upon continuing assurances the defendants Cardoso and Capital Blue would perform," while paragraph 67 alleges, "However, on the first and second of February 2018, and on several occasions thereafter, in order to induce plaintiffs not to terminate the Contract defendants Robertson and MLI personally guaranteed the performance of plaintiffs Capital Blue and Cardoso. In doing so, they have created an obligation on themselves to perform under the contract and assumed liability for non-performance."   In having incorporated paragraphs 64 and 67 into Count VII, Plaintiffs have injected still further immaterial allegations into their Unjust Enrichment claim, which relate to alleged fraud in the performance of the contract by Defendants Cardoso and Merchant Blue, and allegations relating to assumption of a guarantor obligation by Defendants MLI and Robertson.

Next, although Defendants will not reproduce the allegations, *in toto*, here, Plaintiffs have also incorporated into Count VII still further immaterial allegations contained in paragraphs 79 through 81.  These allegations regrettably include scandalous and immaterial allegations that defendant Cardoso has "been involved in various fraudulent transactions, including criminal insurance fraud and check fraud…"

Virtually none of the foregoing avalanche of allegations is material to a claim of Unjust Enrichment.  Count VII constitutes shotgun pleading, and should be dismissed with prejudice.[1]

### F. <u>Count VIII for Civil Conspiracy Against All Defendants</u>

---

[1] Even putting aside Plaintiffs' impermissible shotgun pleading in Count VII, "a plaintiff cannot pursue an equitable theory, such as unjust enrichment or *quantum meruit*, to prove entitlement to relief if an express contract exists." *Ocean Commc'ns, Inc. v. Bubeck*, 956 So.2d 1222, 1225 (Fla. Dist. Ct. App. 2007). "A contract implied in law, or quasi contract, operates when there is no contract to provide a remedy..." *Id.* (citation and internal quotation omitted).  In choosing to seek a remedy under the alleged contract they have attached to their pleading, as a matter of law Plaintiffs made their decision to forbear from "pursu[ing] an equitable theory, such as unjust enrichment…to prove entitlement to relief." *Id.*

To plead civil conspiracy under Florida law, a plaintiff must allege (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D.Fla.2014) (citations omitted).  The plaintiff "must allege an underlying illegal act or tort on which conspiracy is based." *Id*.

It is ironic that, notwithstanding all of the allegations Plaintiffs have incorporated by reference into their pleadings in this action, they have failed to incorporate into Count VIII allegations from any one of the multiple tort counts they have asserted.  Instead, Plaintiffs allege, in conclusory fashion, that, "Defendants have committed torts against Plaintiffs including acts of civil theft, fraud, conversion, fraudulent misrepresentation, aiding and abetting fraud and unjust enrichment."  Aside from the fact that unjust enrichment is not a "tort" and that, axiomatically, there can be no conspiracy to commit unjust enrichment, it cannot be specifically discerned which alleged tort Plaintiffs' civil conspiracy claim is predicated upon.  If, for example, Plaintiffs wished to allege a conspiracy to commit the tort of conversion, it should have been set forth in a separate count pursuant to Rule 10(b) and the Magistrate Judge's Order (Doc. 22).  The same would hold true if Plaintiffs intended to assert a conspiracy to commit fraud.  Count VIII should be dismissed for failure to state a cognizable claim, and/or as unintelligible.

Additionally, while damages are a necessary element of a civil conspiracy claim, Plaintiffs only vaguely allege that "Plaintiffs have been damaged in its [sic] business and property." (Doc. 25, ¶98).  Which "business" and "property," and "damaged" in what way and to what extent, one can only guess.

Finally, Plaintiffs request for injunctive relief under Count VIII is legally insufficient on

its face. (Doc. 25, ¶100).  Plaintiffs have failed to allege that there would be no adequate remedy at law for their alleged harm, and have alleged neither irreparable harm, nor facts supporting irreparable harm. See, e.g., *Contemporary Interiors, Inc. v. Four Marks, Inc*., 384 So. 2d 734, 735 (Fla. 4th DCA 1980) ("Plaintiff's complaint alleges it will suffer irreparable harm because of defendant's interference with its 'property rights,' but contains no ultimate facts to this effect."). Further, Plaintiffs' request to enjoin Defendants from transferring any funds from any of their accounts to anyone but Plaintiffs (Doc. 25, ¶100) is patently frivolous.

## III.    REQUEST FOR RELIEF

Defendants respectfully request that the action be dismissed with prejudice based on failure to comply with the Order of the Honorable Magistrate Judge and Eleventh Circuit authority, or in the alternative, that Counts I, II, III, IV, VI, VII and VIII against Defendants Cardoso and Capital Blue be dismissed, with or without prejudice, as the Court may deem proper.

Respectfully submitted,

*/s/ Michael L. Feinstein*
Michael L. Feinstein, Esq.
MICHAEL L. FEINSTEIN, PA
FBN 650382
200 SE 18th Court
Fort Lauderdale, FL 33316
Telephone: (954) 767-9662
Facsimile: (954) 764-4502
Email: Michael@feinsteinlaw.net

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 4th, 2018, I electronically filed the foregoing document to the Clerk of the Court, using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the attached Service List in the manor specified, either by transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for counsel of parties who are authorized to receive electronically Notices of Electronic Filing.

By: */s/ Michael L. Feinstein*
MICHAEL L. FEINSTEIN, P.A.

**<u>SERVICE LIST</u>**

**Attorneys for Plaintiffs**

Blanca M. Valle, Esq.
1408 Brickell Bay Drive #411
Miami, Florida 33131
Bvalle77@hotmail.com
(305) 302-0002

Lawrence Daniel O'Neill
O'Neill and Company
150 East 52nd Street, Suite 1901
New York, New York 10022
Ldoneill@oneil-company.com
(917) 753-6147
**Attorney for Defendants**
**MLI and Kevin M. Robertson**

Mark C. Perry
Law Offices of Mark C. Perry, P.A.
2400 East Commercial Boulevard, Suite 511
mark@markperrylaw.com
(954) 351-2601